IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FIRST NATIONWIDE MORTGAGE :
CORPORATION, et al.         :
                            :
v.                          :  Civil Action No. WMN-01-2982
                            :
FISI MADISON, LLC           :

## MEMORANDUM

Before the Court are Defendant's Motion to Dismiss (Paper No. 9) and Plaintiffs' Motion for Injunctive Relief (Paper No. 13). The motions are fully briefed and ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted and Plaintiffs' motion denied.

## I.  BACKGROUND

The undisputed facts giving rise to this declaratory judgment action are as follows. In November 2000, First Nationwide Mortgage Corporation and its subsidiary, FNC Insurance Agency, Inc. (collectively referred to as "First Nationwide") entered into a marketing and services agreement (the Agreement) with FISI. Under the Agreement, FISI paid First Nationwide a $750,000 "recommitment bonus" to secure the right to market a Customer Appreciation Program of insurance products to First Nationwide's mortgage customers for a three year term. The Agreement specified that either party could terminate the

agreement upon 90 days notice.  In case of such termination, First Nationwide would be required to return $250,000 of the bonus for each year remaining on the three-year term, unless it could show that FISI had first breached certain duties.  See, Agreement at §§ A.6 & E.  If no breach were shown, FISI would be entitled to continue to receive premiums collected from First Nationwide customers who purchased optional coverage through FISI's program for an additional five years.  Id. at § F.

FISI's obligations under the Agreement included, inter alia, completion of an initial "account reconciliation" and monthly reconciliations of account records.  Id. at §§ A.4, A.5.  By letter of April 16, 2001, First Nationwide informed FISI that it was electing to terminate the Agreement because it found that FISI had failed to complete the required initial account reconciliation.  See, Mot. to Dismiss at Exh. 2C.  The letter informed FISI that the Agreement would terminate as of August 1, 2001.  Id.  In response, FISI requested that First Nationwide reconsider its decision.  Id. at Exh. 2D (May 31, 2001 Letter from Walt Wasyliw).  On June 13, 2001, First Nationwide informed FISI that additional consideration had not changed First Nationwide's decision to terminate.  Id. at Exh. 2E.  In a follow-up letter dated July 18, 2001, First Nationwide reiterated its decision to terminate, but informed FISI that the termination

would now be effective October 1, 2001, to allow for the two month "reconsideration period." Id. at Exh. 2F. The letter also stated First Nationwide's intention to retain the entire $750,000 bonus, and to cease remission of premiums to FISI as of October 1, 2001. Id.

On August 2, 2001, counsel for FISI responded to First Nationwide's July 18 letter. Counsel wrote the following:

> Based on the current facts, FISI rejects any assertion that [First Nationwide] has any right to terminate the Agreement. Accordingly, if [First Nationwide] proceeds with termination, efforts to convert optional plan members and to retain the entire $750,000 marketing bonus will be met with swift legal action. . . . FISI would prefer a more amicable resolution of this matter but, if necessary, FISI is fully prepared and will pursue all legal and equitable remedies available to it to fully protect its rights under the Agreement.

Mot. to Dismiss at Exh. 2G. Then, in a letter dated August 30, 2001, counsel for FISI stated that FISI had been made aware that First Nationwide was marketing other insurance services to its customers, constituting what counsel referred to as "a blatant breach" of the Agreement. Counsel informed First Nationwide that "FISI has authorized us to pursue all legal and equitable remedies available to it based on these facts." Id.

On August 31, 2001, First Nationwide filed suit in the Circuit Court for Frederick County, requesting a declaratory judgment that FISI had materially breached the Agreement by

3

failing to complete the initial and monthly reconciliations, and that as a result, First Nationwide was permitted to terminate the Agreement, retain the entire bonus, and convert its customers to other insurance products.  See, Complaint at 2.  FISI was served with process ten days later.  See, Pls.' Opp. at 5.  On October 9, 2001, FISI removed the declaratory judgment action here, invoking this Court's diversity jurisdiction.  On October 12, 2001, FISI filed suit in the United States District Court for the Middle District of Tennessee, asserting that First Nationwide breached the Agreement, and asserting contract and tort claims against "the insurance broker believed to have marketed the [other insurance] coverage to First Nationwide."  Mot. to Dismiss at 4.

FISI now seeks to dismiss First Nationwide's action for declaratory judgment, on the ground that this Court should use its discretion to abstain from entertaining the suit.  First Nationwide opposes the motion and has moved this Court to enjoin all proceedings in the district court in Tennessee.

## II.  LEGAL STANDARD FOR DECLARATORY JUDGMENTS

The Declaratory Judgment Act, 28 U.S.C. § 2201, grants federal district courts the discretionary power to entertain

declaratory judgment actions.[1]  See, Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  A federal court has discretion to entertain a declaratory judgment action if the relief sought (i) "'will serve a useful purpose in clarifying and settling the legal relations in issue'" and (ii) "'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  Continental Casualty Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (quoting Nautilus Ins. Co. v. Winchester Homes, 15 F.3d 371, 375 (4th Cir. 1994)).  District courts "have great latitude in determining whether to assert jurisdiction over declaratory judgment actions," but should refuse to entertain a declaratory judgment only for good cause.  Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937).

### III. DISCUSSION

In general, when parties to a dispute file mirror-image suits in two federal district courts, priority is given to the suit that is filed first.  See, Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n. 2 (4th Cir. 1974).  FISI

---

[1] Although First Nationwide originally filed this action for declaratory relief under Maryland state law, the federal Declaratory Judgment Act will govern the case in this Court. Federal courts sitting in diversity apply state substantive law and federal procedural law.  See, Erie Railroad Co. v. Tomkins, 304 U.S. 64 (1938).  The Declaratory Judgment Act is a procedural statute that creates no substantive rights.  See, Bourazak v. N. River Ins. Co., 379 F.2d 530, 533 (7th Cir. 1967).

argues that this Court should not follow the "first filed" rule in this case, however, for two reasons. First, FISI asserts that First Nationwide's declaratory judgment action is merely "a preemptive strike" that constitutes forum shopping or "procedural fencing." Mot. to Dismiss at 6-7. Second, FISI urges dismissal on the ground that its lawsuit in the Middle District of Tennessee will more efficiently resolve the entire dispute between the parties.

Declaratory judgment actions are appropriate to allow "the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998). Such actions are disfavored, however, when they are filed in anticipation of another lawsuit, in order to obtain a more favorable forum or procedural posture. See, e.g., Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937); Myles Lumber Co. v. CNA Financial Corp., 233 F.3d 821, 824 (4th Cir. 2000). See also, Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 557 (S.D.N.Y. 2000) ("An improper anticipatory filing is one made under the apparent threat of a presumed adversary filing the mirror image of that suit in another court.") (citation omitted).

The factual history of this dispute supports a finding that First Nationwide filed this action in anticipation of an

impending breach of contract lawsuit by FISI. Although First Nationwide had ostensibly made its decision to terminate the Agreement by April 2001, it did not file this declaratory judgment action to clarify its legal rights until it received the August 2, 2001 letter from FISI's counsel, threatening "swift legal action" if First Nationwide went through with its plan. Tellingly, when it filed its Complaint in state court just a few weeks later,[2] First Nationwide described litigation between the parties as "imminent and inevitable." Complaint at ¶ 52. Given that FISI's principle place of business is in Tennessee, and its legal counsel is located there, First Nationwide could have foreseen that the impending legal action would be filed in Tennessee. Rather than waiting to become a defendant in Tennessee, First Nationwide jumped on the chance to be a plaintiff in Maryland.

First Nationwide argues that it could not have "raced to the courthouse" because FISI delayed in filing its lawsuit until October 12, 2001, even though it had proclaimed First Nationwide to be in breach as of August 30, 2001, when FISI became aware that First Nationwide was marketing other insurance products. It

---

[2] First Nationwide filed suit only one day after FISI's counsel wrote the August 30, 2001 letter, which again threatened legal action. It is not clear from the record, however, whether First Nationwide received that letter before filing suit.

is true that "there can be no race to the courthouse when only one party is running." Learning Network, Inc. v. Discovery Communications, Inc., 2001 U.S. LEXIS 11881, *10 (4th Cir. June 7, 2001). In this case, however, the Agreement's termination did not become effective until October 1, 2001, at which point FISI could claim First Nationwide to be in full breach, because only then had it actually terminated the contract, retained the entire bonus, ceased to pay premiums, and converted customers to other products. Waiting until October to bring suit was not a delay by FISI, but rather a prudent step in carrying out its threat of legal action against First Nationwide.³ See, FISI Letters of August 2, 2001, and August 30, 2001.

First Nationwide also sets out to distinguish its behavior from that of plaintiffs in cases cited by FISI, where courts have found evidence of bad faith and procedural fencing. Unlike these other plaintiffs, First Nationwide did not delay in serving process on FISI, nor file its action in secret, nor use the suit as leverage in settlement discussions. See, e.g., Essex Group

---

³ Likewise, First Nationwide's reliance on Nucor Corp. v. Aceros Y Maquilas De Occidente, S.A., 28 F.3d 572 (7th Cir. 1994), is unavailing. In Nucor, the Seventh Circuit affirmed the district court's denial of a motion to dismiss a declaratory judgment action. Both courts' decisions were based in large part on the fact that the defendant in the declaratory judgment action had not filed its own lawsuit. Here, not only did FISI file its own suit, it did so exactly when it had threatened to: when First Nationwide's termination became effective in October 2001.

Inc. v. Cobra Wire & Cable, Inc., 100 F.Supp.2d 912 (N.D. Ind. 2000); Tempco Elec. Heater Corp. v. Omega Eng'g Inc., 819 F.2d 746 (7th Cir. 1987); Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc., 2001 U.S. App. LEXIS 17225 (6th Cir. July 31, 2001). For these reasons, the timing and motivation of First Nationwide's filing of this action, taken alone, might allow this Court to retain jurisdiction.

The Court is persuaded, however, that proceeding with this declaratory judgment action would not efficiently "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Continental Casualty Co., 35 F.3d at 965. Declaratory judgment actions should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." Aetna Casualty & Surety Co., 92 F.2d at 325. The lawsuit filed by FISI in the Middle District of Tennessee provides a broader and more comprehensive forum for resolving the entire dispute between the parties. For example, were this Court to entertain the instant action, yet not award First Nationwide the declaratory judgment it desires, FISI would still have to bring a separate breach of contract action to obtain relief. Were this Court to grant the requested relief, this action would still fail to address FISI's claim that First Nationwide's pre-termination marketing of other

insurance products constituted a breach. In contrast, the litigation in Tennessee would encompass all issues, including the affirmative defense presented by First Nationwide in this action. See, BASF Corp. v. Symington, 50 F.3d 555, 559 (8th Cir. 1995) (observing that, "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue"). Accordingly, this Court finds that judicial economy would be best served by dismissing this action and permitting the parties to proceed in the Tennessee case.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss, and will deny Plaintiffs' Motion for Injunctive Relief. A separate order consistent with this memorandum will issue.

*(signature)*
William M. Nickerson
United States District Judge

Dated: April 4, 2002